The Honorable V.O. "Butch" Calhoun State Representative P.O. Box 394 Des Arc, Arkansas 72040
Dear Representative Calhoun:
This opinion is being issued in response to your recent questions regarding the White River Levee District, which was established by Special Act 97 of 1911. You have presented the following questions:
 (1) Who can deny taxpayers access to the levee (for the purpose of traveling on the levee) in a levee district?
(2) Do the citizens who are being denied access have any recourse?
 (3) Is a certain percentage of taxpayers required in order to make a formal request of action by the courts?
RESPONSE
Question 1 — Who can deny taxpayers access to the levee (for purposes oftraveling on the levee) in a levee district?
Access to both public and private levees for the purpose of driving a vehicle on the levee is restricted by law. The criminal statutes make it a misdemeanor to drive or ride on a public levee or to drive or ride on a private levee without the landowner's consent. See A.C.A. § 5-72-110. These criminal provisions do not apply in two situations: (1) Where the "properly constituted authorities" have laid out roads on the levee and the levee has ceased to be of practical use to the county; and (2) Where the proper authorities have established crossings over the levee. Id.
In addition to the criminal restrictions to access described above, it is my opinion that the board of directors of the White River Levee District has the authority to restrict access to the levee. Act 97 of 1911 granted the board the authority to "make all needful regulations and do all acts in their opinion necessary to secure the levee district under their control from overflow by the waters of the White River or its tributaries. . . ." Acts 1911, No. 97, § 3. This grant of authority is quite broad, and could encompass a decision by the board to restrict access to the levee. (The board, of course, could not restrict access in derogation of legal rights-of-way.) This grant of authority could also encompass a decision by the board to authorize affected private landowners to restrict access if they should deem such restriction necessary to the accomplishment of the purposes of the district. Authorization of this nature could, under the authority of the provision quoted above, be contractually granted by the board to the landowners.
Question 2 — Do the citizens who are being denied access have anyrecourse?
Any citizen who believes that the denial of access to the levee is unlawful or inappropriate has at least two forms of recourse.
First, the citizen could file a lawsuit against the levee district. I, of course, could not predict the citizen's probability of success in such a suit. The outcome would depend upon the particular facts of the case, as well as upon the legal theory that would serve as a basis for the citizen's complaint.
Second, assuming that the citizen is a property owner within the levee district (and could therefore vote in elections for board members), the citizen could band with other voting property owners and elect new board members who would be more sympathetic with and committed to an agenda that would comport with the citizen's views.
Question 3 — Is a certain percentage of taxpayers required in order tomake a formal request of action by the courts?
No. Any one affected property owner (or any group of affected property owners) in the levee district could initiate an action in court. (Such property owners would be well advised to seek the advice of counsel for the purpose of identifying and analyzing all of the pertinent procedural, substantive, and strategic issues that arise out of the particular factual scenario: e.g., the validity of the citizens' actual individual standing to sue, the validity of their claims, and whether the matter could be pursued as a class action.)
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Suzanne Antley.
Sincerely,
WINSTON BRYANT Attorney General
WB:SBA/cyh